Anne M. GOLDBERG, Daniel Garner, Gerald Garner, Daniel Garner and Harvey Garner, as Trustees of G Family Trust # 1, Gerald J. Garner and Harvey Garner, as Trustees of G Family Trust # 2, Gerald J. Garner and Daniel Garner, as Trustees of G Family Trust # 3, Daniel Garner and Harvey Garner, as Trustees of G Family Trust # 11, Gerald J. Garner and Harvey Garner, as Trustees of G Family Trust # 12, Louis Goldberg and others similarly situated, Plaintiffs,

v.

UNITED PARCEL SERVICE OF AMERICA, INC., Fidelity Union Bank, Larry P. Breakiron, Charles R. Buckridge, Walter E. Danielwski, Carl Kaysen, George C. Lamb, Jr., Donald W. Laydon, Gary E. MacDougal, Kent C. Nelson, Paul Oberkotter, John W. Rogers, George P. Williams, III, Defendants.

No. 84 CV 1076.

United States District Court,
E.D. New York.

Jan. 7, 1985.

Garner, Kreinces, Lichtenstein & Schindel by Leonard Kreinces, Mamaroneck, N.Y., for plaintiffs.

Schnader, Harrison, Segal & Lewis by Irving R. Segal, Philadelphia, Pa., Proskauer, Rose, Goetz & Mendelsohn by George G. Gallantz, New York City, for defendant United Parcel Service of America, Inc.

Riker, Danzig, Scherer & Hyland by Robert Fischer III, Newark, N.J., Cooper, Dunham, Clark, Griffin & Moran by Jules P. Kirsch, New York City, for defendant Fidelity Union Bank.

## MEMORANDUM AND ORDER

PLATT, District Judge.

Defendants in this action have moved for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Plaintiffs cross-moved for certification as a class. For the reasons stated below, the defendants' motion is granted and therefore, the Court need not reach a decision on the class certification motion.

## BACKGROUND

Plaintiffs, former United Parcel Service (UPS) employees and their families, initially alleged that defendants violated three antifraud provisions of the federal securities laws, by making false representations and omitting material facts with respect to the terms on which UPS stock would be repurchased by UPS after plaintiff Louis Goldberg's retirement. Specifically, plaintiffs believe that they have a right to have their 26,144 shares of stock repurchased at the fair market value of the stock; a price which, they believe, would be higher than the $11 per share price tendered by the Board of Directors.

Defendants deny their allegations of fraud. They argue that plaintiffs were contractually bound to sell their stock back to UPS under the terms of the trust which was created to hold employee-owned stock

such as plaintiffs'. In addition, defendants assert that since the sections of the Securities Act of 1933, upon which plaintiffs rely for their claim, are directed to fraud against purchasers, the plaintiffs, as sellers, do not have standing to state a claim under those sections.

Plaintiffs argue that the employee Stock Trust Agreement violates both the UPS Certificate of Incorporation and Delaware law, and is therefore invalid. Plaintiffs also allege that they are both purchasers and sellers of UPS stock.

## FACTS

United Parcel Service of America, Inc., or UPS, is essentially an employee-owned Delaware corporation whose stock is not traded on any securities exchange or in the organized over-the-counter market. UPS, since its establishment, has sought to keep ownership of its stock in the hands of its own managers and supervisors, and to that end established, in 1954, a Managers Incentive Plan (hereinafter cited as the "Plan") whereby eligible employees were awarded shares of UPS stock as a bonus or were awarded the right to purchase shares of the stock. All stock awarded under this Plan is subject to the UPS Managers Stock Trust (hereinafter the "Trust"). Upon receiving stock from UPS pursuant to the Plan, the recipient signs the Trust deposit agreement, which clearly states on the back that all the Trust provisions and restrictions apply to stock held on deposit. After the stock is deposited into the Trust, which is held by co-defendant Fidelity Union Bank, the beneficiary receives a Stock Trust receipt, which has the provisions of the UPS Managers Stock Trust Agreement printed on the other side. Copies of the UPS Managers Stock Trust Deposit Agreement and the UPS Managers Stock Trust Receipt appear in the parties' moving papers and subsequent correspondence adding to the record after oral argument on the motion. It should be noted that on the front of the Deposit Agreement right

above Louis Goldberg's signature is the statement: "I have read the trust agreement provided on the reverse side hereof and agree to its terms."

An employee may at any time request withdrawal of his shares for transfer purposes, but, UPS is entitled, pursuant to the Trust Agreement, to purchase the stock back from the employee at the fair market value as set by the Board. In addition, if a member of this Plan ceases to be an employee of the company, UPS reserves the right to purchase his shares at the fair market value, subject to some variation depending on the number of shares held by the employee. For example, if the employee holds less than 500 shares, UPS, within three years, may elect to purchase all or part of the member's shares at the fair market value. If the employee holds more than 500 shares, UPS may purchase a maximum annual amount equal to 10% of the shares held by the employee over a thirteen-year period.

UPS's certificate of incorporation permits the fair market value of the shares to be determined quarterly by the UPS Board of Directors. Paragraph 6 of the Trust Agreement provides that the shares can be repurchased by the Company at the fair market value. It also provides that where there is a conflict over the fair market value between the shareholder and UPS, the value will be set at the average price per share of all shares sold in the twelve-month period immediately preceding the receipt by the company from the Trustee of the shares being purchased.

Plaintiff Louis Goldberg acquired all of his UPS stock pursuant to the Plan by way of purchase option and awards made to him during his employment. These shares amounted to $65,358 at the time of his retirement in January 1978, although he transferred some of his stock to his wife and family members. Although the rights of the members of the Trust are not assignable, employee-members are permitted to transfer shares to immediate family mem-

bers; the stock held by these family members remains subject to the trust agreement covering the stock.

UPS notified Mr. Goldberg in April 1983 of its intention to exercise its purchase option of Goldberg's stock. The number of shares UPS was permitted to repurchase during that particular installment amounted to 26,144 shares.

The 26,144 shares represented the 10% annual installment, adjusted for the November 1982 four-for-one stock split. UPS exercised its purchase option on August 24, 1983 at a price of $11 per share; this price was set by the Board of Directors at its previous quarterly meeting. UPS also exercised its option with respect to some 600 other shareowners, purchasing in total over 2,000,000 shares at $11 per share. Two days later, on August 26, 1983, the Board released its next quarterly announcement, in which it established a new fair market value of UPS stock of $13.50.

## DISCUSSION

A motion for summary judgment will be granted where the record, read in the light most favorable to the non-moving party, reveals that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law.

■ In order for a plaintiff to maintain an action under rule 10b–5 of the federal securities laws, he must show causation; that is, he must demonstrate that he relied to his detriment on the alleged misrepresentation or fraud. Under the terms of the Trust Agreement all employees are required, upon termination of employment, to sell their stock back to UPS. Mr. Goldberg had full notice of this requirement and herein may not claim that he relied to his detriment on any alleged misrepresentation or fraud. Understandably he and his family are upset that the Board raised the price of each share by $2.50 two days after they repurchased a considerable number of plaintiff's shares, but this they had the right to do under the terms of the Trust. In short, plaintiffs cannot show the requisite causation to maintain a securities fraud claim.

■ Besides their fraud claim, plaintiffs' claim that the Trust Agreement is inconsistent with the Certificate of Incorporation and Delaware law is also unfounded. UPS's company philosophy from the beginning has reflected a desire to keep all of its stock in the hands of its managers and supervisors. To that end, the Certificate of Incorporation provided a right of first refusal to purchase UPS stock prior to any stockholder transferring that stock to another party. The Trust Agreement, formed in 1958, serves these same ends.

■ Plaintiffs' final claim that the Trust Agreement is prohibited by Delaware law is also unfounded. Section 202(b) of the Delaware Corporation Law provides that restrictions on the transfer of securities of a corporation may be imposed by an "agreement among any number of security holders or among such holders and the corporation." Plaintiffs agreed to the provisions of the Trust whenever they purchased or received stock from UPS. It should be noted that the stock that Louis Goldberg received prior to the formation of the Trust Agreement, that is, before 1958, is also subject to the terms of the Trust.

For the reasons stated above, the defendants' motion is granted.

SO ORDERED.